FILED

2016 DEC 20 PM 3: 29

CLERK, US DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DISTRICT

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Case No.: |
| v. ) | 3:16cv1563-J-32-PDB |
| ) | |
| CITY OF JACKSONVILLE, FLORIDA ) | |
| ) | |
| Defendant. ) | |
| ) | |

**COMPLAINT AND DEMAND FOR JURY TRIAL**

The United States of America alleges as follows:

**NATURE OF ACTION**

1. The United States brings this action for declaratory and injunctive relief, and monetary damages and a civil penalty, against the City of Jacksonville, Florida (the "City"), under the Fair Housing Act, Title VIII of the Civil Rights Act of 1968, as amended ("FHA"), 42 U.S.C. §§ 3601 *et seq.*, and Titles II and V of the Americans with Disabilities Act of 1990, as amended ("ADA"), 42 U.S.C. §§ 12131–12134, 12203, and their implementing regulation, 28 C.F.R. Part 35. The City has discriminated on the basis of disability by preventing the development of residences for people with disabilities from operating within its Springfield Historic District ("Springfield"), in violation of the FHA and ADA.

1

## JURISDICTION AND VENUE

2. This Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1345; 42 U.S.C. § 3614(a); 42 U.S.C. §§ 12132-12133, 12203(c); and 28 U.S.C. §§ 2201 and 2202.

3. Venue is proper in the Middle District of Florida under 28 U.S.C. § 1391 because the events or omissions giving rise to this action occurred in this judicial district and because Defendant and the property at issue in this action are located there.

## DEFENDANT

4. Defendant City of Jacksonville is a unit of government organized under the laws of the State of Florida, and is a "public entity" within the meaning of the ADA, 42 U.S.C. § 12131(1), 28 C.F.R. § 35.104, subject to Title II of the ADA, 42 U.S.C. §§ 12131-12134, and its implementing regulation, 28 C.F.R. Part 35.

5. The City is governed by a Mayor and a 19-member City Council.

6. Land use in the City is governed by the Jacksonville Zoning Code ("Zoning Code"), which is Chapter 656 of the City of Jacksonville Ordinance Code.

7. The City has a Planning and Development Department ("Planning Department"), which is responsible for administering, enforcing, and interpreting the City's Zoning Code. Zoning Code § 656.109(a). The Planning Department is led by its Planning Director, who serves at the discretion of the Mayor. Within the Planning Department is a Current Planning Division, which is responsible for zoning interpretation, and a Development Services Division, which is responsible for issuing Certificates of Use ("COU").

## FACTUAL ALLEGATIONS

### *Ability Housing, Inc.*

8. Ability Housing, Inc. ("Ability Housing") is a non-profit focused "on the development and operation of quality affordable rental housing for individuals and families experiencing or at risk of homelessness and adults with a disability."

9. On March 14, 2014, Ability Housing was awarded a $1,355,222 grant by the Florida Housing Finance Corporation ("FHFC") to revitalize a 12-unit multiple-family dwelling located at 139 Cottage Avenue in Jacksonville, Florida ("the Property"), to create "permanent supportive housing" ("PSH") for "chronically homeless" individuals, each of whom would have at least one disability.

10. In its FHFC grant application, Ability Housing stated that each unit of the Property would house one to two individuals who had a disability diagnosed by a licensed health care provider. The application stated that there would be no on-site management. Instead, property management and optional, individualized support services would be offered off-site to the residents by third-party providers. Ability Housing would have oversight of the third-party management, but it would not provide the management itself. The FHFC grant application additionally noted that "service provision shall not be a component of the lease or a requirement to maintain tenancy" and that "residents shall have legal leases with all the rights and responsibilities associated with standard market leases."

11. As part of its FHFC application, Ability Housing submitted a certification noting its compliance with the City's zoning and land use regulations. The certification

was signed by the City's Planning Services Manager, who is responsible for issuing such documents.

12. The Property is a "dwelling" within the meaning of 42 U.S.C. § 3602(b). Ability Housing's intended residents for the Property are persons with disabilities, or are regarded by the City as persons with disabilities, within the meaning of 42 U.S.C. §§ 3602(h), 12102, and 28 C.F.R. § 35.104, and they are qualified to receive services and participate in programs or activities provided by the City within the meaning of 42 U.S.C. § 12131(2).

### *The City's Zoning Code*

13. The Property is located in the City's Residential Medium Density-Springfield ("RMD-S") District and is considered an original use multiple-family dwelling, which means it had a multiple-family dwelling use at the time of its construction, Zoning Code § 656.366(a). Original use multiple-family dwellings, two-family dwellings, and single-family dwellings are permitted as of right in the RMD-S District. Zoning Code § 656.368(I)(a).

14. The RMD-S District is located in the City's Springfield Historic District ("Springfield"), an approximately one square mile area that is subject to the City's Springfield Zoning Overlay ("the Overlay"). Zoning Code § 656.365.

15. The Overlay was enacted in 2000 in part to address "intensive and intrusive uses" and to respond to the allegedly negative consequences of high concentrations of rooming houses, group care homes, and community residential homes of seven or more people in Springfield. Zoning Code § 656.365(e).

16. The Overlay is divided into four Districts, including the RMD-S District. Zoning Code § 656.368. Each of the Overlay's four Districts prohibits new "special uses." Zoning Code § 656.369(g). Under the Overlay, "[t]he following uses are identified as special uses: residential treatment facilities, rooming houses, emergency shelter homes, group care homes, and community residential homes of seven or more residents." *Id.*

17. The Zoning Code does not define "special uses," but each of the enumerated list of special uses is defined under the Zoning Code. Zoning Code § 656.1601. Those special uses existing at the time of the Overlay's establishment are allowed to remain in Springfield if they conform to certain standards, including annual inspections, 24-hour on-sight supervision, and a prohibition against chain-link fences. Zoning Code § 656.369(g). These standards are not applied to multiple-family dwellings, two-family dwellings, and single-family dwellings allowed in Springfield. Zoning Code § 656.368.

18. The Zoning Code allows a resident to request a "Written Interpretation" of the Zoning Code if that resident claims to be an "adversely affected person as a result of the implementation of any provision of the Zoning Code." Zoning Code § 656.109(a). The Director of the Planning Department is charged with issuing the Written Interpretation. *Id.* Written Interpretation appeals are heard before the City's Planning Commission. Zoning Code § 656.109(b). Written Interpretation requests are infrequent.

19. The Zoning Code requires COUs for all structures other than single-family residences and duplexes. Zoning Code § 656.151. It makes the City's Zoning Administrator responsible for issuing COUs. Zoning Code § 656.153. The Zoning Code

5

directs COU appeals to take place before the COU Board, Zoning Code § 656.156, which it dictates is comprised of the Planning Director and chiefs of the Building Inspection Division and Fire Marshal's Office, Zoning Code § 656.1601.

*<u>Ability Housing's Experience Under the City's Zoning Code</u>*

20. On April 3, 2014, the City's Planning Director and the Chief of its Current Planning Division attended a meeting hosted by community members who vocalized their opposition to the Property's development. Ability Housing also attended the meeting and presented on its plans for the Property. At the meeting, the Planning Director stated that from the limited materials he had seen, the Property appeared to be a permitted multiple-family dwelling under the Zoning Code.

21. At the April 3, 2014 meeting, and in all its interactions with the City, Ability Housing has maintained that its intended use of the Property is consistent with the Overlay as an original use multiple-family dwelling.

22. On April 29, 2014, two community members—through counsel—requested a Written Interpretation concerning Ability Housing's planned use for the Property. The request argued that Ability Housing's planned use was a prohibited special use under the Overlay. The request referenced the intended residents' disabilities in its argument.

23. On May 29, 2014, after privately meeting with one of the community members who made the request, the Planning Director issued a Written Interpretation in which he determined that the Property as intended by Ability Housing is a prohibited special use under the Overlay. The community members' request was the only such

request related to zoning received by the Planning Director throughout his more than three-year tenure in the role. The Planning Director stated in the Written Interpretation:

> [A]ll residents will have a disability diagnosed by a licensed professional health care provider, and it is anticipated that most residents will have a primary diagnosis of mental illness and a long history of psychiatric hospitalization. Additionally and importantly, support services will be provided by community organizations.

24. Prior to the Planning Director issuing the Written Interpretation, the City's chief of the Current Planning Division drafted a version of the Written Interpretation for the Planning Director concluding that the Property was a permitted use under the Overlay.

25. On June 11, 2014, Ability Housing appealed the Written Interpretation. In its appeal, Ability Housing noted that another one of its properties, Village on Wiley, had a similar use as the Property and was issued a COU defining it as "multi-family apartments" under the Zoning Code. In support of its appeal Ability Housing explained how its intended use for the Property was distinguishable from all of the enumerated special uses under the Overlay. Ability Housing also referenced the FHA, including its reasonable accommodation provisions, and asked the City to "allow disabled and chronically homeless persons the opportunity to enjoy the same housing opportunities as would be clearly permitted to any other multi-family tenant on the same property."

26. On September 4, 2014, the City's Planning Commission conducted a hearing and upheld the Written Interpretation by a 6-2 vote. The Planning Commission was instructed by the City's Office of General Counsel that its sole responsibility was to

determine whether the Written Interpretation was clearly erroneous as a matter of law and not whether the Written Interpretation violated federal anti-discrimination laws.

27. On February 24, 2015, Ability Housing applied for a COU for the Property. Ability Housing withdrew its first COU application on May 20, 2015, and reapplied on July 1, 2015. In its application, Ability Housing attached materials from other apartment complexes in the City providing services to their residents. It also "specifically request[ed] the City's recognition that the disabled may live in dwelling units in this multiple family building as part of Ability Housing's ... efforts to provide [PSH] for the disabled."

28. Under the Zoning Code, COUs are normally issued by the City's Zoning Administrator, who issues the COUs evaluated by staff. Both of Ability Housing's COU applications were internally approved by those staff members regularly tasked with designating zoning approval. Ability Housing's COU application, however, was "elevated" to the Planning Director for a determination.

29. On July 28, 2015, the Planning Director issued a letter to Ability Housing denying the COU application and explaining that the Written Interpretation remained "in full force and effect."

30. On August 27, 2015, Ability Housing appealed the COU denial to the COU Board. In its appeal documents, Ability Housing referenced the FHA and its reasonable accommodation provision.

31. On October 16, 2015, the COU denial was unanimously upheld at a hearing before the COU Board. At the hearing, the Planning Director—who also sits on the COU

Board—indicated that his decision to follow the Written Interpretation was based on advice he received from the Mayor's office. Another COU Board member stated that he could not consider the ADA or FHA when making his determination.

32. Because of its inability to get approval from the City, Ability Housing lost its FHFC funding and was unable to close on the Property under its purchase and sale agreement.

*The Community's Opposition to the Property*

33. City officials acquiesced to community opposition to Ability Housing's plans for the property.

34. Beginning before the April 3, 2014 meeting, and continuing through the October 16, 2015 COU Board hearing, Springfield community members organized against Ability Housing's plans for the Property. Community members sent dozens of emails to City officials and decision-makers stating that the City should prohibit Ability Housing's use of the Property because of the intended residents' disability. For example, one community member wrote: "We don't need more homeless shelters, mentally ill and/or chronically unemployed people pan-handling on our sidewalks, roaming our neighborhood going through my garbage cans." Another wrote: "This is not just another apartment complex, [i]t is a complex specifically for drug addicted, mentally ill 'veterans[.]'[ ] We do not deserve this or want it." Others complained that the Property would not provide "adequate services" or supervision for those who lived there.

35. City decision-makers received these emails and were aware of the community's opposition to the Property's intended residents based on the residents'

9

disability. The Planning Director, in issuing the Written Interpretation, gave in to community opposition. He attended the April 3, 2014 community meeting and privately met with one of the individuals who requested the Written Interpretation, which referenced the intended residents' disability, prior to making his decision. *See* para. 22, *supra*. The Planning Commission was also in receipt of the Written Interpretation request. At the September 4, 2014 Planning Commission hearing, one commissioner stated that she engaged in extensive *ex parte* communications about the Property prior to the hearing, and another noted that she was "very sympathetic to the residents of Springfield." Another noted that he stopped counting after 72 the number of "folks that have reached out one way or another with an opinion."

36. At the October 16, 2015 COU Board hearing, Springfield's City Councilmember stated: "I am in support of the community and I'm in opposition of us moving forward with this project."

***Private Litigation Related to the Property***

37. On November 18, 2015, Ability Housing filed suit against the City in this Court making claims under the FHA and ADA (Case No. 3:15-CV-1380). On November 25, 2015, a second federal lawsuit was filed against the City by Disability Rights Florida (Case No. 3:15-CV-1411). These two cases were subsequently consolidated.

38. The Local Initiative Support Corporation ("LISC") is a private nonprofit that since 2002 or 2003 has received money from the City and has funded Ability Housing with this money. Prior to filing its lawsuit, Ability Housing was informed by LISC that it

would be funded from this money under the same amount funded in the 2014-2015 fiscal year, for which Ability Housing was awarded $78,000.

39. During her April 26, 2016 deposition in the consolidated case, Kerri Stewart admitted under oath that while she was the Mayor's Chief of Staff, she instructed LISC that it was prohibited from giving Ability Housing this money under its contract with the City because of Ability Housing's active federal litigation with the City.

## COUNT I: FAIR HOUSING ACT VIOLATIONS

40. The allegations listed above are incorporated herein by reference.

41. Defendant City of Jacksonville's actions described above constitute:

   a. discrimination in the sale or rental of, or otherwise making unavailable or denying, a dwelling because of disability, in violation of the FHA, 42 U.S.C. § 3604(f)(1);

   b. a refusal to make reasonable accommodations in rules, policies, practices, or services when such accommodations may be necessary to afford a person an equal opportunity to use and enjoy a dwelling, in violation of the FHA, 42 U.S.C. § 3604(f)(3)(B); and

   c. retaliation against a person in the exercise or enjoyment of, or on account of his having exercised or enjoyed, or on account of his having aided or encouraged any other person in the exercise or enjoyment of, any right granted or protected by the FHA, in violation of 42 U.S.C. § 3617.

42. Defendant City of Jacksonville acted intentionally, willfully, and in disregard for the rights of others.

43. Defendant City of Jacksonville's actions described above constitute a denial of rights protected by the FHA to a group of persons, which denial raises an issue of general public importance, in violation of 42 U.S.C. § 3614(a). The United States is authorized to bring this action under 42 U.S.C. § 3614(a), and seeks declaratory and injunctive relief, monetary damages for aggrieved persons, and a civil penalty to vindicate the public interest.

44. Ability Housing and the intended residents of the Property are "aggrieved persons" within the meaning of 42 U.S.C. §§ 3602(i) and 3614(d)(1)(B).

### COUNT II: AMERICANS WITH DISABILITIES ACT VIOLATIONS

45. The allegations listed above are incorporated herein by reference.

46. The U.S. Department of Justice is the federal agency responsible for administering and enforcing Titles II and V of the ADA, 42 U.S.C. §§ 12131–12134, 12203, and their implementing regulation, 28 C.F.R. Part 35, and is authorized to bring this action under 42 U.S.C. §§ 12133, 12203(c). The United States seeks declaratory and injunctive relief and compensatory damages for aggrieved persons against the City.

47. All conditions precedent to the filing of this Complaint have occurred or been performed.

48. Defendant City of Jacksonville's actions described above:

   a. constitute discrimination in violation of Title II of the ADA, 42 U.S.C. § 12132, and its implementing regulation, 28 C.F.R. Part 35;

   b. exclude individuals with disabilities from participation in and deny them the benefits of the services, programs, or activities of a public entity on the

    basis of disability, in violation of Title II of the ADA, 42 U.S.C. § 12132, and its implementing regulation, 28 C.F.R. § 35.130(a);

c. afford qualified individuals with disabilities an opportunity to participate in or benefit from the services of a public entity that are not equal to those afforded others, in violation of Title II of the ADA, 42 U.S.C. § 12132, and its implementing regulation, 28 C.F.R. § 35.130(b)(1);

d. otherwise limit a qualified individual with a disability in the enjoyment of any right, privilege, advantage, or opportunity enjoyed by others receiving the aid, benefit, or service, in violation of Title II of the ADA, 42 U.S.C. § 12132, and its implementing regulation, 28 C.F.R. § 35.130(b)(1);

e. fail to make reasonable modifications in policies, practices, or procedures necessary to avoid discrimination on the basis of disability, in violation of Title II of the ADA, 42 U.S.C. § 12132, and its implementing regulation, 28 C.F.R. § 35.130(b)(7);

f. exclude or otherwise deny equal services, programs, or activities to an individual or entity because of the known disability of an individual with whom the individual or entity is known to have a relationship or association, in violation of Title II of the ADA, 42 U.S.C. § 12132, and its implementing regulation, 28 C.F.R. § 35.130(g); and

g. discriminate against an individual because that individual opposed an act or practice made unlawful by Title II of the ADA, 42 U.S.C. § 12132, in

violation of Title V of the ADA, 42 U.S.C. § 12203, and its implementing regulation, 28 C.F.R. § 35.134(a).

49. Defendant City of Jacksonville acted intentionally, willfully, and in disregard for the rights of others.

50. As a result of the City's conduct, qualified individuals with disabilities have suffered damages and injuries.

51. Ability Housing and the intended residents of the Property are "aggrieved persons" within the meaning of 42 U.S.C. § 12203(c).

## RELIEF REQUESTED

WHEREFORE, the United States requests that the Court enter an ORDER:

a. Declaring that the Defendant's actions violate the FHA and the ADA and its implementing regulations;

b. Enjoining the Defendant, its officers, employees, agents, successors and all other persons in active concert or participation with it, from enforcing the City's Zoning Code in a manner that discriminates against persons with disabilities;

c. Ordering the Defendant to take all affirmative steps to ensure its compliance with the FHA and ADA, including steps necessary to prevent the recurrence of any discriminatory conduct in the future and to eliminate to the extent practicable the effects of its unlawful practices as described herein;

d. Ordering the Defendant to take all affirmative steps to restore, as nearly as practicable, the victims of the Defendant's unlawful practices to the position they would have been in but for the Defendant's discriminatory conduct;

e. Awarding monetary damages, pursuant to the FHA, 42 U.S.C. § 3614(d)(1)(B), and the ADA, 42 U.S.C. §§ 12131–12134, 12203, and its implementing regulation, 28 C.F.R. Part 35, to all aggrieved persons; and

f. Assessing a civil penalty against the Defendant in an amount authorized by 42 U.S.C. § 3614(d)(1)(C) to vindicate the public interest.

The United States further prays for such additional relief as the interests of justice may require.

## REQUEST FOR TRIAL BY JURY

The United States demands a trial by jury of all issues so triable pursuant to Rule 38 of the Federal Rules of Civil Procedure.

Dated: December 20, 2016

                                                LORETTA E. LYNCH
                                                Attorney General

A. LEE BENTLEY, III                    VANITA GUPTA
United States Attorney                 Principal Deputy Attorney General
Middle District of Florida              Civil Rights Division

                                                SAMEENA SHINA MAJEED
YOHANCE A. PETTIS                  Chief
Fla. Bar No. 021216
Assistant United States Attorney
United States Attorney's Office        */s/ Abigail B. Marshak*
Middle District of Florida               MICHAEL S. MAURER
400 North Tampa Street, Suite 3200   Deputy Chief
Tampa, FL 33602                        ABIGAIL B. MARSHAK
Phone: (813) 274-6000                NY Reg. No. 5350053
Fax: (813) 274-6198                   Trial Attorney
Yohance.Pettis@usdoj.gov           U.S. Department of Justice
                                                Civil Rights Division
                                                Housing and Civil Enforcement Section
                                                950 Pennsylvania Avenue NW – G St.
                                                Washington, DC 20530
                                                Phone: (202) 514-1968
                                                Fax: (202) 514-1116
                                                Abigail.Marshak@usdoj.gov